Norman **HENGEMUHLE**, Relator,

v.

**LONG PRAIRIE JAYCEES,**
uninsured, Respondent,

and

**State Treasurer, Custodian of the Special Compensation Fund, Respondent.**

No. C1–83–1897.

Supreme Court of Minnesota.

Nov. 21, 1984.

56

Paul A. Weingarden, Harlan G. Sween, Minnetonka, for relator.

Long Prairie Jaycees pro se.

Hubert H. Humphrey, III, Atty. Gen., Thomas G. Lockhart, Sp. Asst. Atty. Gen., St. Paul, for respondent.

## OPINION

SIMONETT, Justice.

We review on certiorari the decision of the Workers' Compensation Court of Appeals affirming the findings and order of the Compensation Judge denying the relator-employee permanent total disability benefits. We reverse and remand, and, in so doing, set out the scope of review of the Workers' Compensation Court of Appeals under the 1983 appellate review amendments to the Workers' Compensation Act.

On November 15, 1973, the employee, Norman Hengemuhle, injured his back while working for his uninsured employer, respondent Long Prairie Jaycees. On September 16, 1974, following a hearing, the employee was awarded temporary total disability benefits. He also received supplementary and retraining benefits. These benefits were paid by the State Treasurer, as custodian of the Special Compensation Fund, until February 24, 1981, when benefits were discontinued because of the 350 week limitation. Thereafter, the employee petitioned for permanent, total disability and for 20% permanent partial disability of the back. This petition was heard before Compensation Judge John E. Jansen in September 1982. On June 3, 1983, the compensation judge issued his findings of fact, conclusions of law, and order denying permanent total disability benefits, but requiring payment of permanent partial disability benefits, based on his finding of 10% permanent partial disability attributable to the 1973 injury.

On July 1, 1983, employee appealed the compensation judge's decision to the Workers' Compensation Court of Appeals. On October 31, 1983, the court of appeals unanimously affirmed. The employee now seeks further review in this court by certiorari. The Long Prairie Jaycees have defaulted in these proceedings, but the State Treasurer appears in opposition to the employee.

I.

The 1983 legislature made major revisions in the appellate review provisions of the Workers' Compensation Act, *see* 1983 Minn.Laws, ch. 301, and the effect of these revisions seems to be in some doubt. The pertinent statutes as amended are set out below.[1]

---

1. 176.421 Appeals to Workers' Compensation Court of Appeals.

Subdivision 1. **TIME FOR TAKING; GROUNDS.** When a petition has been heard before a compensation judge, within 30 days after a party in interest has been served with notice of an award or disallowance of compensation, or other order affecting the merits of the case, he may appeal to the workers' compensation court of appeals on any of the following grounds:

(1) the order does not conform with this chapter; or

(2) the compensation judge committed an error of law; or

(3) the findings of fact and order were ~~unwarranted by the evidence~~ unsupported by substantial evidence in view of the entire record as submitted; or

(4) the findings of fact and order were procured by fraud, or coercion, or other improper conduct of a party in interest.

1983 Minn.Laws ch. 301, § 148.

Subd. 6. **POWERS OF WORKERS' COMPENSATION COURT OF APPEALS ON APPEAL.** On an appeal taken under this section, the workers' compensation court of appeals may:

~~(1) disregard the findings of fact which the compensation judge has made;~~

~~(2)~~(1) examine the record;

~~(3)~~(2) substitute for the findings of fact made by the compensation judge such findings as the total evidence requires; and,

~~(4)~~(3) make an award or disallowance of compensation or other order as the facts and findings require.

1983 Minn.Laws ch. 301, § 150.

176.441 Appeal Based on Fraud or Insufficiency of the Evidence.

Subdivision 1. **DISPOSITION BY WORKERS' COMPENSATION COURT OF APPEALS.** Where an appeal has been taken to the workers' compensation court of appeals under this chapter, on either the ground that the findings or order or both were ~~unwarranted by the evidence~~ unsupported by substantial evidence in view of the entire record as submitted, or were procured by fraud, coercion, or other improper conduct of a party, the workers' compensation court of appeals may:

(1) grant a hearing based on the record before the compensation judge; or,

(2) remand the petition for a de novo hearing or a rehearing and notify the chief hearing examiner, who shall assign the de novo

## A.

The employee first argues that the new appellate review standards may not be applied retroactively to his case. He cites the established rule that the workers' compensation law in effect at the time of injury governs, absent a clear manifestation of legislative intent to the contrary. *See Leahy v. St. Mary's Hospital*, 339 N.W.2d 265, 267 (Minn.1983); *Kahn v. State, University of Minnesota*, 327 N.W.2d 21, 27 (Minn.1982) (even a new "procedure" for recovery of attorney fees will not be applied retroactively). *See also* Minn.Stat. § 645.21 (1982) (a law will not be construed to be retroactive unless clearly so intended by the legislature). Here, however, the legislature has clearly stated its intent:

> Sections 146 and 148 to 152 [the changes here involved] are procedural changes and are effective for all cases pending on July 1, 1983, regardless of the date of injury, date of hearing, or date of appeal and all decisions of workers' compensation judges and the workers' compensation court of appeals issued on or after July 1, 1983, shall apply the provisions of those sections.

1983 Minn.Laws, ch. 301, § 236. Nothing could be clearer. Mr. Hengemuhle's case was pending before the Workers' Compensation Court of Appeals as of July 1, 1983, when he filed his appeal. The 1983 amendments, effective July 1, 1983, apply to his case.

The employee next argues that even if the legislature intended the 1983 amendments to apply to pending cases, to implement this intent would be an unconstitutional deprivation of his vested rights. The employee's argument seems to be that he has a vested contractual right in the standard of appellate review that was in existence at the time of his injury in 1973. There is no merit to this contention. The 1983 amendments do not impose any new liability, burden or obligation on either party, nor do they deprive or alter the employee's right to collect benefits upon presentation of adequate proof of entitlement. The amendments do not change the kind of evidence required to make out a claim. *See Manikowske v. North Dakota Workmen's Compensation Bureau*, 338 N.W.2d 823 (N.D.1983). We hold that the 1983 appellate review provisions are applicable to cases pending on July 1, 1983, and that this application impairs no vested rights.

## B.

Employee suggests that the 1983 appellate review amendments are only cosmetic and that the Workers' Compensation Court of Appeals operates under these amendments essentially as it did before. We disagree.

Prior to July 1, 1983, the Workers' Compensation Court of Appeals was not required to defer to the judgment of the compensation judge. The court of appeals could disregard the compensation judge's findings and substitute its own findings. *Dotstry v. Radisson Hotel*, 266 N.W.2d 716, 717 (Minn.1978); *Townsend v. Nelson*, 308 Minn. 374, 376, 242 N.W.2d 607, 609 (1976) ("may reverse the compensation judge even on questions of credibility"). In other words, the court of appeals was as much a trier of fact as the compensation judge.

hearing or the rehearing before a compensation judge; or,
   (3) sustain, reverse, or modify the order appealed from.
1983 Minn.Laws ch. 301, § 151.
  176.471  Review by Supreme Court on Certiorari.
   Subdivision 1. **TIME FOR SEEKING RE-VIEW; GROUNDS.** Where the workers' compensation court of appeals has made an award or disallowance of compensation or other order, if a party in interest acts within 30 days from the date he was served with notice of the order, he may have the order reviewed by the supreme court on certiorari upon one of the following grounds:
   (1) the order does not conform with this chapter; or,
   (2) the workers' compensation court of appeals committed any other error of law; or,
   (3) the findings of fact and order were ~~unwarranted by the evidence~~ <u>unsupported by substantial evidence in view of the entire record as submitted.</u>
1983 Minn.Laws ch. 301, § 152.

The 1983 amendments change the old procedure. The ground for appeal to the court of appeals is no longer whether the findings and order are "unwarranted by the evidence" but whether they are "unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 176.421, subd. 1(3) (Supp.1983). Significantly, the old provision, allowing the court of appeals to "disregard the findings of fact which the compensation judge has made," has been stricken, although the provision giving the court of appeals the power to substitute its own findings remains. Minn.Stat. § 176.421, subd. 6 (Supp.1983). Inconsistencies in the law as amended are not hard to find, but the thrust of the amendments is clear. The legislature intends the Workers' Compensation Court of Appeals to be just that, an appeals court, operating as an appellate review body and leaving the basic factfinding to the compensation judge who presides at the evidentiary hearing.

Under the prior practice, as relator's counsel explained at oral argument, if a case had any substance, it would be appealed to the Workers' Compensation Court of Appeals for, in effect, a kind of *de novo* hearing. The hearing before the compensation judge was treated as only an initial fact-gathering proceeding. Under the 1983 amendments, the court of appeals no longer may disregard the compensation judge's findings and substitute its own but it instead performs an appellate review function. This should result in fewer appeals to the Workers' Compensation Court of Appeals, with resultant savings in time and cost to the workers' compensation system. We think it may be of some significance that the legislature added the appellate review amendments, not to its then pending bill for general revision of the workers' compensation law, but to House File No. 1290, an appropriations bill dealing with budget considerations. *See DeRoche v. American Hoist & Derrick,* 36 W.C.D. 116, 122–23 (1983) (where the Workers' Compensation Court of Appeals also recognizes its role has been changed by the 1983 amendments).

■ With this background in mind, we construe the 1983 amendments to provide that the standard of review by the Workers' Compensation Court of Appeals is as follows: The court of appeals can no longer disregard the compensation judge's findings and order. The court of appeals, instead, determines if the findings and order are supported by substantial evidence in view of the entire record as submitted. If the findings and order are so supported, the court of appeals affirms. If not, then, in that event only, the court of appeals may substitute its own findings, or it may remand to the compensation judge for a rehearing.

■ The standard of review—whether the findings and order are supported by substantial evidence—means the findings are to be affirmed if, in the context of the record as a whole, they are supported by evidence that a reasonable mind might accept as adequate. *See Consolo v. Federal Maritime Commission,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Minnesota Power & Light Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 324, 328 (Minn.1983) ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *quoting Reserve Mining Co. v. Herbst,* 256 N.W.2d 808, 825 [Minn.1977]).

■ In applying this standard, the Workers' Compensation Court of Appeals looks not only at the evidence which supports the compensation judge's findings, but also at the opposing evidence and the evidence from which conflicting inferences might be drawn. The evidence, in a sense, is weighed to determine its substantiality. This is what is meant by viewing "the entire record as submitted." *See Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 487–89, 71 S.Ct. 456, 463–65, 95 L.Ed. 456 (1951) (construing the phrase "on the record as a whole"). The Workers' Compensation Court of Appeals must also give due weight to the opportunity of the compensation judge to evaluate the credibility of witnesses ap-

pearing before the judge. Further, in applying the substantial evidence standard, where the evidence is conflicting or more than one inference may reasonably be drawn from the evidence, the findings of the compensation judge are to be upheld. In other words, the court of appeals is not to substitute its view of the evidence for that adopted by the compensation judge if the compensation judge's findings are supported by evidence that a reasonable mind might accept as adequate.

Much—perhaps too much—has been written on what is meant by the substantial evidence standard. The phrase, by its very nature, eludes any definitive explanation.[2] It is enough to add here that the standard is an admonition to the reviewing court not to treat the findings of the factfinder lightly, while at the same time the reviewing court remains cognizant of its own responsibility to exercise good judgment in reviewing what the evidence will reasonably sustain.

In this case, although we reach a different result on the merits than the Workers' Compensation Court of Appeals (see Part II, *infra*), it appears to us that the court of appeals, insofar as we can tell, used the appropriate standard of review.[3]

**2.** Justice Frankfurter's comment on the elusiveness of a standard of review is apt:

"Since the precise way in which courts interfere with agency findings cannot be imprisoned within any form of words, new formulas attempting to rephrase the old are not likely to be more helpful than the old. There are no talismanic words that can avoid the process of judgment. The difficulty is that we cannot escape, in relation to this problem, the use of undefined defining terms.

*Universal Camera Corp. v. National Labor Relations Board,* 340 U.S. 474, 489, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

**3.** The court of appeals stated, "The record reveals ample support for the findings of the Compensation Judge * * *. We cannot say that reasonable minds must come to a contrary conclusion * * *." But see, however, footnote 4, *infra.*

**4.** Thus in *Anderson v. Associated Milk Producers, Inc.,* 306 N.W.2d 542, 543–44 (Minn.1979), we said:

## C.

This court has formulated its own limited scope of review of the decisions of the Workers' Compensation Court of Appeals, which is as follows:

The facts are viewed in the light most favorable to the findings of the WCCA. * * * In the case at bar, the WCCA largely affirmed the findings of fact of the compensation judge. These findings will not be disturbed unless they are manifestly contrary to the evidence "or unless the evidence clearly requires reasonable minds to adopt a contrary conclusion." [Citations omitted.]

*Egeland v. City of Minneapolis,* 344 N.W.2d 597, 601 (Minn.1984). We adhere, of course, to this statement of our limited review of findings of fact, this role being of long standing. *See Lading v. City of Duluth,* 153 Minn. 464, 190 N.W. 981 (1922); *Schoewe v. Winona Paint & Glass Co.,* 155 Minn. 4, 191 N.W. 1009 (1923). It should be kept in mind that the decision which comes to us for review is the decision of the Workers' Compensation Court of Appeals. We do not again weigh the evidence to determine what we would prefer the findings to be.[4]

It is the decision of the court of appeals, however, which we review, and it is settled that it is not the function of this court in reviewing that decision to see whether on the facts the decision is correct or even preferable to another, but rather, and only, to ascertain whether it has sufficient basis of inference reasonably to be drawn from the facts. Unless this court can then say that there is no such basis, reversal would be a transgression of our proper function of review as distinguished from that of initial determination of fact issues. Moreover, the findings of the court of appeals are reviewed in the light most favorable to them. *Saholt v. Northwest Airlines, Inc.,* 290 Minn. 393, 188 N.W.2d 772 (1971).

Minn.Stat. § 176.471, subd. 1(3), as amended by 1983 Minn.Laws, ch. 301, § 152, changes one of the three grounds for supreme court review from whether the findings of fact and order were "unwarranted by the evidence" to "unsupported by substantial evidence in view of the entire record as submitted." This section does no more than set out what is to be reviewed. We do not understand the legislature intended

In other words, in taking still another look at the case, this court will intrude only if, viewing the facts in the light most favorable to the findings, it appears that the findings are manifestly contrary to the evidence or that it is clear reasonable minds would adopt a contrary conclusion.[5] Implicit in this formulation of our role is the view that our threshold for intruding on the factfinding process may be higher than that of the Workers' Compensation Court of Appeals. Our scope of review recognizes, too, that the Workers' Compensation Court of Appeals is a specialized agency of the executive branch, its members selected for their experience and expertise, and entrusted with deciding, in consistent and appropriate fashion, "all questions of law and fact arising under the workers' compensation laws" brought to it on appeal. *See* Minn.Stat. ch. 175A.01, subd. 2 (1982). This is evident, perhaps most dramatically, in the power given the Workers' Compensation Court of Appeals, even under the 1983 amendments, unlike most appellate bodies, to make and substitute its own findings of fact in those instances where the compensation judge's findings are set aside because they fail to meet the substantial evidence standard. *See* Minn.Stat. § 176.421, subd. 6(2) (Supp.

1983).[6] Substituted findings of the court of appeals must, of course, also be supported by substantial evidence in view of the entire record as submitted.

It is unusual for an appellate body to have this power of substitution, and this invites one further comment. When a case comes to us for review of substituted findings made by the Workers' Compensation Court of Appeals, we will have before us two broad issues: First, whether the court of appeals was correct in setting aside the compensation judge's findings; and, second, if those findings were properly set aside, whether the substituted findings of the court of appeals should be affirmed. The scope of our review on these two issues will be under the "manifestly contrary to the evidence" standard, viewing the facts in the light most favorable to the findings before us, keeping in mind, however, that when we are reviewing substituted findings, this court is then acting as the first, as well as the final, reviewer of the substituted findings.

## II.

Finally, we reach the merits of this case. The compensation judge concluded that the "employee has failed to sustain his burden of proving by a fair preponderance of the

here for us to reweigh the evidence under a substantial evidence standard, which would be a transgression by this court of its proper review function.

5. In a recent Workers' Compensation Court of Appeals decision, *DeRoche v. American Hoist & Derrick,* 36 W.C.D. 116, decided September 7, 1983, and also cited in the text of this opinion, the court of appeals in considering its appellate role under the 1983 amendments cited *Hough v. Drevdahl & Son Co., Inc.,* 281 N.W.2d 690 (Minn.1979), which used the *Egeland* scope of review, namely, that the findings are not manifestly contrary to the evidence. This, of course, is the scope of review used by the Supreme Court, but is not to be used by the Workers' Compensation Court of Appeals. We mention this because, although the court of appeals in its decision here did not cite either *Hough* or *Egeland* or use their language, it is uncertain if it may nevertheless have so considered Mr. Hengemuhle's appeal under the standard set forth in those cases.

6. The substantial evidence test which the legislature put in the Workers' Compensation Act by

its 1983 amendments appears to be the same substantial evidence test used in the Administrative Procedure Act for judicial review of other agency decisions. *See* Minn.Stat. § 14.69(e) (1982). It should be kept in mind, however, that the test is here being applied against the background of the workers' compensation system. For example, in *Minnesota Power & Light Co. v. Minnesota Public Utilities Commission,* 342 N.W.2d 324, 328–29 (1983), we noted, in the context of judicial review of a rate of return and rate allocation determination, that the substantial evidence test is not solely directed at the quantity of evidentiary support and, in some instances where an agency must make a "judgment call" on a somewhat opaque factual record, the substantial evidence test may be more directed at the articulation of the agency's reasoning process. Ordinarily, we would not expect the kind of cases coming before the Workers' Compensation Court of Appeals to involve a record requiring the kind of "judgment call" referred to in *Minnesota Power & Light Co.*

evidence that he is permanent[ly] and totally disabled." Even though the Workers' Compensation Court of Appeals has affirmed, and even though we take the evidence in the light most favorable to the findings, we conclude that the compensation judge's conclusion is based on findings that are manifestly contrary to the evidence as a whole, and that there must be a reversal.

Mr. Hengemuhle is 57 years old, with àn eighth grade education and with job experience in farming and bricklaying. His physical capabilities—lifting, standing, stooping, bending—are substantially limited by his back injury. In 1975–76, he attempted to retrain for shoe repair work, but the standing and sitting in a bent position required him to stop. In 1977 he tried working as a security guard, but the extended walking acerbated his back condition and he stopped after about 2 months. The state's employment expert testified that Mr. Hengemuhle was theoretically capable of performing some kinds of gainful employment, and the state's physical therapist agreed, but there was little evidence as to just how the employee was to translate this theoretical capacity into an actual job.

In November 1981, Mr. and Mrs. Hengemuhle obtained work as caretakers of an apartment building and were so employed at the time of the September 1982 hearing. Mrs. Hengemuhle does about 9/10ths of the work, including cleaning vacant apartments and hallways. Mr. Hengemuhle does light tasks, maybe 3 or 4 hours a day, working at his own measured pace, doing such things as changing light bulbs, picking up light trash, and caring for the lawn and swimming pool. He lies down for about an hour a day to relieve his back and legs. The compensation judge found that the "employee and his wife held and jointly performed an apartment caretaking job, with employee performing the lighter duties of the job and his wife performing the heavier duties; they receive as monthly compensation for their work a salary of $500.00 plus free rent including utilities and phone worth at least an additional $500.00." The Workers' Compensation

Court of Appeals observed that the compensation judge had "apparently found the employee's present employment along with his wife as caretaker, yielded more than insignificant or insubstantial income."

An employee is totally disabled within the meaning of Minn.Stat. § 176.-101, subd. 5, when the employee's "physical condition, in combination with his training and experience, and the type of work available in his community, causes [the employee] * * * to be unable to secure anything but sporadic employment resulting in an insignificant income." *Stevens v. Computer Metal Products, Inc.*, 312 N.W.2d 450, 452 (Minn.1981). Here the compensation judge pointed out that Mr. Hengemuhle had been "working steadily for almost one full year, sharing with his wife a substantial portion of the duties of their joint employment as apartment caretakers," and, "for their joint efforts," they were receiving substantial compensation.

We think these findings misjudge the evidence and lack substantial support in the evidence. The record shows the couple received $500 a month salary, of which Mrs. Hengemuhle receives $410 for her services; Mr. Hengemuhle receives only $90 a month for his work, hardly a substantial sum. If one adds on $267 (the value of the apartment rental, utilities and phone was put at $535 a month, half of which is about $267), Mr. Hengemuhle's total monthly compensation is about $357 a month. But even $357 a month is misleading, because it is really dependent on the wife doing most of the work. Without his wife, it is highly unlikely Mr. Hengemuhle would be employable, much less gainfully so, as a caretaker. The misjudgment here is in crediting the employee with the spouse's labor and earnings.

We hold that the compensation judge's findings that Mr. Hengemuhle was steadily employed at a job giving him substantial compensation are manifestly contrary to the evidence. Consequently, we reverse these findings and the conclusion that permanent total disability was not established.

We remand the case to the Workers' Compensation Court of Appeals. The court of appeals has the option, in its discretion, to remand to the compensation judge for a rehearing, or it may, as seems more likely, consider the record sufficient to make its own substituted findings on the issue of permanent total disability.

Reversed and remanded.