Sharon E. **GORNICK**, Relator,

v.

**GILLETTE COMPANY,**
**self-insured, Respondent.**

No. C0–85–1233.

Supreme Court of Minnesota.

Nov. 22, 1985.

Riebard A. LaVerdieve, Hastings, for relator.

Jay T. Hartman, Minneapolis, for respondent.

YETKA, Justice.

A divided Workers' Compensation Court of Appeals panel set aside the compensation judge's determination that employee had sustained a 10% permanent partial disability of the back and substituted a finding that employee had not proved such disability. Having concluded that the compensation judge's finding had substantial support in the evidence and that the WCCA did not correctly apply the standard of review required by Minn.Stat. § 176.471 (1984), we reverse and remand for reinstatement of the compensation judge's decision.

Employee sustained injury to her neck and lower back on January 26, 1981, in a fall during the course of her work. The self-insured employer recognized the compensability of her injuries and paid her temporary total disability benefits until April 10, 1981. The employer then discontinued payment of benefits after obtaining a medical opinion that employee could return to her work without restrictions. Employee objected to the discontinuance, claiming that she remained totally disabled and, after a hearing, was awarded benefits to June 22, 1981. However, the compensation judge also determined that she was not entitled to further benefits after that date because films of employee's activities at an outing with her young children at that time were not consistent with her claim that she could do no work. In her decision, filed in January 1982, the compensation judge suggested that if employee's doctors had seen the film, their opinions that she was still totally disabled on the hearing date in November 1981 might have been different.

Neither party appealed that decision, but employee initiated this proceeding by filing

a claim petition in December 1982 seeking compensation for a 10% permanent partial disability of the back.[1] At the hearing on this claim in July 1984, employee testified that her back had gradually improved since the hearing held in the first proceeding. Her neck pain, however, was present one or two nights a week and her lower back pain was more severe and frequent than the neck pain and, although usually dull, was aggravated by many activities, including lifting and carrying her youngest child, bending to bathe her children, vacuuming, cleaning, washing clothes, walking more than 4 blocks at a time, and sitting more than an hour and a half at a time. She said also that driving was difficult and turning her head caused increased neck pain. She could not mow her lawn or shovel, and she had to rest during the day when she tried to be active physically.

Dr. Jack Bert, a board-certified orthopedic surgeon, examined employee in July 1982 and again in March 1984. He did not obtain findings indicative of neurological injury, but said that, on both occasions, pressure applied over the facet joints in the cervical and lumbar spines elicited complaints of pain from employee. Dr. Bert diagnosed facet joint syndrome and said that tenderness in these areas over a 2-year period was consistent with his diagnosis. He gave the opinion that, as a consequence of her work injury, employee had sustained a 5% permanent partial disability of the cervical spine and a similar impairment of the lumbar spine. He said also that employee should not lift more than 75 pounds, should avoid repetitive bending or stooping when she has pain, and should always lift in the proper way, keeping her back straight and her knees bent. Employee's family doctor, Dr. Padilla, in a report dated June 17, 1981, predicted that employee would very likely sustain a permanent partial disability of 15 percent.

Dr. Paul Schanfeld, a neurologist who examined employee in May 1981 and again in April 1983 on behalf of the employer, reported that employee had sustained no neurological deficits and had admitted at the second examination that she was better by then although she still had complaints of pain. He expressed the opinion that there would be no permanent disability rating on an organic basis.

■ After reviewing the evidence, the compensation judge rejected Dr. Schanfeld's opinion that employee had sustained no permanent impairment, in part because, at the time of the injury, it was not necessary that a disability rating for a permanent partial disability "be based on objective medical evidence," a requirement imposed by a 1983 amendment of Minn.Stat. § 176.021, subd. 3 (1982). *See* 1983 Minn. Laws, ch. 290, § 32. Based on the extent and duration of employee's complaints, the compensation judge found that she had sustained the claimed 10% permanent partial disability of the back. Our review of the record satisfies us that the majority of the WCCA erred in overturning this finding because it was supported by substantial evidence in view of the entire record as submitted. That record reveals that the WCCA majority failed to give due deference to the compensation judge's assessment of employee's credibility although they were required to do so by Minn.Stat. § 176.471, subd. 1(3) (1984). *See Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984).

This error apparently resulted from the fact that, in the earlier proceeding, the compensation judge had seriously questioned employee's credibility. However, it does not follow that, as the trier of fact, the compensation judge could not reach a different credibility judgment in this proceeding. The aims of the proceedings were very different; in the first, employee claimed that she continued to be totally disabled while, in this proceeding, she sought only to prove a relatively minor permanent impairment. In the first pro-

---

1. She also claimed that she had continued to be temporarily totally disabled after June 21, 1981, but subsequently dropped that claim.

ceeding, the compensation judge gave considerable weight to the films which showed employee on an outing with her children during which she carried her youngest child (weighing between 20 and 25 pounds), lifted another small child off a merry-go-round horse while holding the first, squatted, stooped, and held and swang the child up with one hand to hold her under her arm because they were inconsistent with employee's claim of total disability. In this proceeding, the films did not necessarily have the same impact. In fact, Dr. Bert gave the opinion that a person with a 10% permanent partial disability of the back could perform the activities recorded and said also that employee had squatted and lifted in the proper way during these activities. Dr. Bert's further testimony that employee's continuing symptoms were consistent with his diagnosis of facet joint syndrome and that "when a patient has persistent tenderness over one specific area it is very difficult for a patient to fake or malinger that finding" also offered some reason for the compensation judge to accept employee's testimony in this proceeding concerning the extent and duration of her symptoms. We conclude that the record, as a whole, offered no justification for the majority of the WCCA to discount employee's testimony or to substitute its own assessment of her credibility for that of the compensation judge.

The WCCA also laid some stress on the fact that Dr. Bert's rating of 5% impairment of the cervical spine and 5% impairment of the lumbar spine did not translate into a 10% permanent partial disability of the back, on the fact that the ratings for these areas were equal although employee had said her lower back caused her greater problems than her neck, and on the fact that Dr. Bert's opinions were based on employee's subjective complaints. Reference has already been made to the fact that employee was not required to provide objective medical evidence of her permanent impairment, and neither the fact that Dr. Bert rated equal impairments in both areas of employee's spine nor the fact that his ratings did not translate to a 10% perma-

nent partial disability of the whole back required total rejection of his opinions. Instead, the compensation judge had the right to determine what weight to give those opinions and ultimately had to determine the extent of employee's impairment based on all of the evidence, including her testimony about her symptoms and the extent to which her injury affected her life. *See Hosking v. Metropolitan House Movers Corp.,* 272 Minn. 390, 138 N.W.2d 404 (1965); *Unger v. Balkan Mining Co.,* 248 Minn. 510, 80 N.W.2d 846 (1957); *Persaud v. Metropolitan Transit Comm'n,* 36 W.C.D. 231 (1983). We conclude that the finding of a 10% permanent partial disability had substantial support in the evidence as a whole. Consequently, we reverse the decision of the WCCA and remand for reinstatement of the decision of the compensation judge.

Employee is awarded attorney fees of $400.

Reversed and remanded.