**M. Solomon BEY, a/k/a Mary Benson, Respondent,**

v.

**OXFORD PROPERTIES, INC. and Fireman's Fund Insurance Co., Relators.**

No. C1-91-1346.

Supreme Court of Minnesota.

Feb. 21, 1992.

---

**41**

Kenneth B. Huber, Baukol, Nyberg & Thompson, St. Louis Park, for relators.

David R. Vail, Wilbur Fluegel, Sieben, Grose & Von Holtum, Minneapolis, for respondent.

COYNE, Justice.

Our review by certiorari of the decision of the workers' compensation court of appeals reversing the denial of benefits for psychological impairment and remanding for redetermination turns on the admissibility of the report of an independent medical examination and the deposition of the examiner. The WCCA ruled that the compensation judge had erred in admitting into evidence the report and deposition, which had not been served or filed within 120 days of service of the claim petition.[1] On the facts of this case, we reverse and rein-

---

1. Minn.Stat. § 176.155, subd. 1 governs the admissibility of reports of independent medical examinations:

**176.155. EXAMINATIONS.**

**Subdivision 1. Employer's physician.** The injured employee must submit to examination by the employer's physician, if requested by the employer, and at reasonable times thereafter upon the employer's request. The employee is entitled upon request to have a personal physician present at any such examination. Each party shall defray the cost of that party's physician. Any report or written statement made by the employer's physician as a result of an examination of the employee, regardless of whether the examination preceded the injury or was made subsequent to the injury, shall be made available, upon request and without charge, to the injured employee or representative of the employee. The employer shall pay reasonable travel expenses incurred by the employee in attending the examination including mileage, parking, and, if necessary, lodging and meals. The employer shall also pay the employee for any lost wages resulting from attendance at the examination. A self-insured employer or insurer who is served with a claim petition pursuant to section 176.271, subdivision 1, or 176.291, shall schedule any necessary examinations of the employee, if an examination by the employer's physician or health care provider is necessary to evaluate benefits claimed. The examination shall be completed and the report of the examination shall be served on the employee and filed with the commissioner within 120 days of service of the claim petition.

No evidence relating to the examination or report shall be received or considered by the commissioner, a compensation judge, or the court of appeals in determining any issues unless the report has been served and filed as required by this section, unless a written extension has been granted by the commissioner or compensation judge. The commissioner or a compensation judge shall extend the time for completing the adverse examination and filing the report upon good cause shown. The extension must not be for the purpose of delay and the insurer must make a good faith effort to comply with this subdivision. Good cause shall include but is not limited to:

(1) that the extension is necessary because of the limited number of physicians or health care providers available with expertise in the particular injury or disease, or that the extension is necessary due to the complexity of the medical issues, or

(2) that the extension is necessary to gather additional information which was not included on the petition as required by section 176.291.

state the decision of the compensation judge.

The record discloses six injuries for which the employee procured medical treatment. On January 14, 1981 the employee was injured while boarding a bus. She was treated at Hennepin County Medical Center and was away from her job until April 1981. On August 26, 1981 the employee hurt her hand while emptying a trash bin. Although she sought medical attention and missed one month of work, she neither sought nor received workers' compensation benefits. On January 24, 1982, the employee was injured when the bus in which she was riding collided with an automobile; she was released for work without restrictions on October 15, 1982. On December 2, 1982, the employee slipped and fell in the employer's cafeteria. She received medical attention and temporary total disability benefits until her return to work on September 1, 1983. On the following day, September 2, 1983, the employee again sustained a compensable injury when she tripped over a pipe while cleaning an office that was being remodelled. She has not worked since September 2, 1983.[2] On April 4, 1987 the employee was injured in an automobile accident. None of the injuries sustained in the three vehicular accidents arose out of or in the course of employment.

Over the years following her initial injury the employee, complaining of pain, has consulted and been examined by no fewer than 24 physicians—four of them psychiatrists—two chiropractors, and one psychology professor. On June 23, 1989 the fifth of the six lawyers the employee has engaged in connection with her claims for workers' compensation benefits filed a claim petition alleging psychological impairment as a result of the employee's injury of September 2, 1983. In its response to the petition the employer denied liability and reserved the right to secure an independent medical examination (IME). Within 120 days of service of the claim petition the employer notified employee's lawyer that an IME had been scheduled for a date approximately two weeks beyond the 120 day limit. The employee submitted to examination by Dr. Martin Orbuch without objection. Neither did she object when the employer advised, at the time it served and filed the IME report, of its intention to introduce the report into evidence or when the employer deposed Dr. Orbuch.

On December 12, 1989, the day before the scheduled hearing on the matter, the employee discharged her lawyer. At her request the hearing was struck from the calendar. Five months later the employee engaged her current lawyer. On September 14, 1990, nine months after the original hearing date, the matter came on for hearing. Only then, for the first time, did the employee voice an objection to the admissibility of Dr. Orbuch's IME report and deposition on the ground of timeliness as limited by Minn.Stat. § 176.155, subd. 1 (1990).

After reviewing the record the compensation judge found that the employee had waived objection to the IME report and deposition on the ground of noncompliance with the requirements of section 176.155, subdivision 1, and concluded that the report and deposition were admissible as evidence. On appeal the WCCA ruled that section 176.155, subdivision 1 barred admission of either the written IME report or Dr. Orbuch's deposition and remanded for redetermination on the existing record with direction that the compensation judge should take no additional evidence.

■ In view of the well recognized principles that a compensation hearing is to be conducted in a manner to ascertain the substantial rights of the parties and that the compensation judge is not bound by rules of evidence or by technical or formal rules of pleading or procedure, *e.g.*, Minn.Stat. § 176.411, subd. 1 (1990), the strictures on the admissibility of an IME report and any evidence relating thereto, such as depositions, is indeed surprising and somewhat disconcerting. Leaving admissibility

---

**2.** In July of 1986 the parties entered into an approved stipulation for settlement of a 15% disability of the back as a result of the September 2, 1983 injury. The settlement agreement expressly excepted from its purview any claim for psychological impairment.

of late-filed IME reports to the discretion of the compensation judge, whose determination is based on the equities of the particular case, would seem to be more consonant with the general conduct of compensation hearings.

Nevertheless, the legislature has provided in clear and unambiguous language that the examination must be completed and the medical report served and filed within 120 days of service of the claim petition. Minn. Stat. § 176.155, subd. 1 (1990). More significantly, the statute prescribes the consequences of late filing: "No evidence relating to the examination or report shall be received or considered * * *." The statute expressly provides a procedure for requesting an extension of the time for completing an adverse examination and filing the report and even provides nonexclusive examples of what constitutes "good cause" for an extension.

■ Here the employee objected to neither the tardy adverse examination nor the IME report nor the subsequent deposition of Dr. Orbuch prior to the hearing scheduled for December 13, 1989. Despite the employee's acquiescence to the late IME, there can be no question that when it became apparent that the examination could not be completed and the IME report could not be served and filed within the statutorily prescribed 120 day period, the employer would have been well advised to secure the written extension of time provided by section 176.155, subd. 1. The employee's passive failure to object at the time the employer scheduled an examination beyond the 120 day limit cannot, in our opinion, be said to constitute a waiver. A party has no obligation to educate an opposing party on how to handle its case. The employee might agree to a late independent medical examination in the hope that it might facilitate a settlement, while at the same time planning to object if the report should later be offered in evidence at a hearing.

Nonetheless, when a party to a workers' compensation proceeding acts in a manner contrary to the assertion of a right, the party waives that right. *See Ogren v. City of Duluth*, 219 Minn. 555, 560, 18 N.W.2d 535, 538 (1945). The employee's passive acquiescence is followed by the employee's active request for a continuance of the hearing scheduled for December 13, 1989. Five months went by before she engaged her sixth and current lawyer on May 14, 1990. No objection was raised during the four month interval between the engagement of the new lawyer and the hearing before the compensation judge on September 14, 1990. Had objection been voiced at any time during the nine month delay of the compensation hearing, the employer could have requested the extension of time provided by statute. In view of the employee's convoluted and long-term medical history and the limited number of psychiatrists with whom an employer could schedule an IME, an early request for a short extension of time would almost certainly have been granted. Inasmuch as the statute does not require application for an extension to be made prior to expiration of the time for serving and filing the IME report, it seems to us equally certain that had the objection been raised at any time prior to the hearing, there was no reason to deny an application for an extension of the time in which to serve and file the IME report. Clearly, the employee could not claim surprise with respect to the IME performed more than ten months prior to the hearing. Neither was the employee in any position to contend that the employer's conduct had delayed the proceeding; the delay was at the employee's behest. In short, although we do not condone the employer's lack of attention to the statutory requirements, we are of the opinion that the finding that the employee waived noncompliance with the requirements of section 176.155, subd. 1, was supported by substantial evidence, *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 59 (Minn. 1984), and that the employee's delaying conduct could be characterized as an element of "good cause" for an extension, which the compensation judge granted by acceptance of the report at the September hearing. We hold, therefore, that the compensation judge did not err in admitting into evidence Dr. Orbuch's IME report and deposition, and we reverse the decision of

the WCCA and reinstate the decision of the compensation judge.

Reversed and reinstated.

YETKA, J., took no part in the consideration or decision of this case.